May it please the court, Lawrence Stern for Nathanael Myers. Your Honors, there are four conditions of supervisory release in this case which were unfounded, contradicted by the District Court's own findings of fact, and overbroad.  The first condition that I'd address is the requirement that he submit to alcohol treatment, notwithstanding that there's no alcohol addiction in his background. He requested a drug program because of his addiction to drugs in prison, but not alcohol. Tell me why this is ripe for our review. In other words, there's been no definitive assessment, as I understand, and so no determination that he'll need substance abuse or alcohol treatment. Is that right? No, Your Honor. My understanding is that the condition requires him, upon release from prison, to submit to alcohol treatment and evaluation. Tell me what in the language of the condition supports that view. The exact language, Your Honor, that would be... I'll tell you what. It's 85 of the record. Did you reserve some time for rebuttal? I did. So I want you to take a look at the language of the condition and tell me what makes it a certain thing that he'll undergo alcohol. I'm pretty sure that the language is mandatory and requires drug treatment and alcohol. The generic guideline makes those either-or conditions. Here he asked for drugs. The court basically repeated the generic guideline. And the government argues that, well, if you're a drug addict and you also are an alcohol addict and ought to be treated for both, that would run afoul of 18 U.S.C. 3583, which requires that a condition be reasonably related to the sentencing requirements or sentencing standards and not be more restrictive than necessary. He did use alcohol in his youth, but he stopped voluntarily, and that's, of course, not addiction. The other... So just let me go back to that question. Sure. It says, shall undergo a drug-alcohol evaluation and treatment if substance abuse is indicated by testing. Well, substance abuse is... If substance abuse is indicated by testing. So I want you to think about that maybe on the phone. And then it's only an evaluation. No, no, I need to get the exact wording, but my recollection... I have Appendix 93, but... Shall participate in a program for substance abuse, including substance abuse testing... Substance abuse testing and shall undergo a drug... We're focused on alcohol. And shall undergo a drug-alcohol evaluation and treatment if substance abuse is indicated. Right, but there's no reason for him to submit even to evaluation for alcohol. There's no alcohol addiction. But there would be if it was indicated. Beg your pardon? But there would be if it was indicated. Well, that would mean that every supervised releasee should be submitted to alcohol evaluation for no reason related to them, their background, the offense, or anything else. What if they have a history of addiction? To drugs. But addiction to drugs is not addiction to alcohol. An addictive personality can take up glue or gambling or any of the other... Well, then again, every supervisee could be tested for everything, and that's a restriction on freedom, which the statute 3583 prohibits, Your Honor. So you're, in addition to the, what you view at least as the condition prohibiting him from using alcohol, you also challenge any effort or any condition that would require an evaluation for alcohol abuse. Of course. Okay. Of course. And he's also prohibited from using alcohol when that's a legal substance. And there's no reason for that prohibition. Therefore, it transcends or violates the rule that a supervised release condition cannot unnecessarily restrict a supervisee's freedom. Shall I move on to the second condition, which is the prohibition on possession of dangerous devices? Of course, there's no supervised release condition against possession of dangerous devices. It's a prohibition against dangerous weapons, those things designed to hurt people. That's the terminology used in the judgment itself. Yes, it's in the judgment, but as this court has held in United States against Pugliese and other cases, it's the oral pronouncement that controls. It does, but if the judgment itself clarifies, it does no more than just clarify what the oral pronouncement said. Well, Your Honor, you call it a clarification, but dangerous devices is not an ambiguous term. It says that any device that's dangerous, like an automobile or a hammer or other things from a toolkit. Or a credit card. Pardon me? Or a credit card. Or a credit card. Well, so that's a little bit of an ambiguity, isn't it? Because one would have to know the opportunities in which the credit card were employed. So how is it not ambiguous, a dangerous device? As to whom? It's overbroad. Because of how it's employed. It's extremely broad, don't you think? Yes, extremely broad, but not necessarily ambiguous. A lot of things are dangerous devices. It might be ambiguous because it's extremely broad. Well, I suppose you could say that. But a probation officer following the oral pronouncement of sentence, if devices is left as the controlling condition, could violate him for possession of anything that could be dangerous. Therefore, it just should be deleted. Okay. The next. You reserve one minute for rebuttal. Oh, I'm done? Okay. Thank you. Red light, red light. Okay, red light, red light. We'll give you some time for rebuttal. Thank you. And we'll hear from the government. Good morning. Good morning. May it please the court. Catherine Gregory representing the United States. This court should affirm the judgment. There was no plain error in the district court's imposition of any of the conditions of supervised release. And just starting off with the last one discussed by counsel, the prohibition on dangerous weapons or destructive devices, this court held in Trusillo that it will affirm where written judgment clarifies an ambiguous oral pronouncement. And that's exactly what happened here. If you look at the judgment itself on A92, it gives examples of things that are dangerous weapons or destructive devices. Anything that was, and I'm quoting, designed or was modified for the specific purpose of causing bodily injury or death to another person, end quote. And then it gives examples such as nunchucks or tasers. How about knives? Yes, that would seem to be. But a knife is not necessarily designed to inflict. That's correct, Your Honor. You're right. To stab people. I mean, sometimes you use it to cut the meat. And that's my mistake, because it does say designed or modified for a specific purpose of causing bodily injury. So probably not a knife, but again, a nunchuck, a taser, a gun, things like that, would fall under this. And that just goes to show that it's pretty specific here with that language. What do you say to your adversary's argument that if he is required to participate in a therapy of some kind, he's ordered to pay for it and he's indigent? I mean, you don't make much money in prison. I'm glad you asked about that, Your Honor, because I think that requires clarification. He's not required to pay the full freight of any- He's required to contribute. He's required to contribute. If he doesn't have any money, he can't contribute. He doesn't have any money today, that's correct. And he's indigent today. But he's not scheduled to be released until 2033. And a lot of things can happen in 11 years. He could find a job upon release from incarceration. He could receive an inheritance. It's just so far removed and abstract. We could get universal health care by then, and he might not have to pay anything. We don't usually function on the principle that people can win the lottery and go to jail. Right, I wouldn't bank on the lottery. But my point is that it says that he's to contribute. And whether that's $1 or $1,000, we just don't know yet. And if, when he is released, he is still indigent, and if he's- We have, in other cases, construed that requirement to allow for indigence. Indigency, I should say. Yeah, and when he's- So that one can be relieved of that burden if you really don't have the money. I mean, he may get a job, but if he has family, kids to support, everything. And he can seek- Yes, Your Honor. And he can seek modification under 3583 if he comes out, he's still indigent, and he simply can't contribute anything. Then that's what 3583 is there for, for this kind of change in circumstances, as it were. And then with respect to the substance abuse evaluation and treatment, I do believe that that speaks for itself. There's an if right there in the special condition on A93. It says it's only if it's indicated by the testing and evaluation that he needs- What was it about this case that led the judge to impose that alcohol-related component of the condition? Well, in the PSR paragraphs 112 to 114, he did say- Excuse me, Mr. Myers did say that he had used alcohol under age. And then, again, his counsel at sentencing said he has a substance abuse issue. Now, he attributed it just to drugs, but he did say he has substance abuse issues. He has mental health issues, and this is why he engaged in these offenses. This is what drove him to commit this. So based on those indicators, it was reasonably related, at least for the evaluation purposes. Again, we just don't know yet if in 11 years he actually will be evaluated, determined to need this treatment, and have to undergo- So what's going to happen? He's released, and then what? He'll undergo the- This is with respect to this alcohol issue. What happens? According to the special condition, he'll be evaluated and tested for treatment of substance abuse and alcohol abuse. So I guess substance abuse is a larger umbrella, but drugs, in his particular case, and alcohol, as specified by the condition. And I think, but maybe I've misunderstood your adversary, Mr. Stern's, argument. I think he says he shouldn't have to comply with that. It's a freedom. Well, in this case, there were indicators, specific indicators, by his admission of unlawful use of alcohol, by using alcohol underage, his own admission that he has substance abuse issues, his own admission he has mental health issues, and his request, in fact, for substance abuse treatment. There was also a recommendation that he undergo, I think, the Bureau of Prison's 500-hour substance abuse program. Perhaps, if he undergoes that in 11 years, he may not need to be treated. And you think that alcohol abuse is subsumed under substance abuse? It's a form of substance abuse? Is that what you're saying? Alcohol abuse can be a form of substance abuse, yes. But I want to clarify, when he was saying that it's sentencing, he was referring just to drugs. He said it was just illicit substances. But we do have those admissions in the PSR 112 to 114 that he did use alcohol in an unlawful manner. Now, based on these facts, that doesn't mean that every defendant everywhere who doesn't have this specific circumstance needs to undergo alcohol evaluation. I can't say that standing here today. What we can look at is- So you would say that if there had not been this signal in the record about his use of alcohol as a teenager, then there wouldn't have been a basis for either that condition or at least the alcohol abuse evaluation component of the condition. I don't know that I can say that standing here. I would want to review the entire PSR again, Your Honor. And I don't mean to dodge that question, as it were. I just think that it's so fact specific.  But you just told me that the only part of the PSR that refers to alcohol abuse is his use of alcohol, I take it, as a teenager. Well, those are the specific. There's a lot in his background that I don't necessarily want to get into on the record. I know that he had some issues in childhood and other things like that. And I would want to review that before I would answer your question about whether or not there would have to be that specific reference alone. But what I can say is, at this point, we're looking at whether it's reasonably related to the circumstances, whether that's what the district court did here, and in this case, whether it was plain error. Because there was no objection below to this particular condition. So was it error? We believe that no, it was not. And it certainly wasn't plain, even if there was error in this case. But analytically, the first thing we need to figure out is, is it even ripe? And we would submit that it's not ripe at this point. Because again, at least the treatment portion is not ripe. Because it just says that he has to undergo the evaluation when he's released. And if it's indicated, he would have to undergo treatment. Thank you. Thank you. Thank you. Mr. Stern, you can. I'm sorry. You can, but you don't have to take off your mask. You have to take off your mask, but you can. Thank you. I don't want to use up seconds. The condition is that he submit to an alcohol treatment program and that he not use alcohol. He was 29 years old when this occurred. He gave up drinking entirely when he was age 23. So you can't say that because someone has ever used alcohol in their lives, that therefore they are required to submit to treatment. It's not just evaluation here. It's treatment as well. And it's prohibition against use. I would like to say briefly about the duty to pay. He has a 20-year sentence. He'll be 50 years old. He'll have a criminal record. He'll have little likelihood of earning enough just to support himself and his children at that time. He will be saddled with a duty to pay in addition for treatment if this condition is allowed to stay. He will not have counsel to go back to a judge and say, take away this condition of duty to pay. He'll be stuck with it. That's the reason why we have an appeal right at this point to take away conditions that aren't supported by the record. Thank you. Thank you very much. We will reserve the decision in that matter. We'll turn next to not dead yet. Hopeful. May it please the court. My name is Jessica Richwalder, and I represent Plaintiff Appellants. Can you pull the microphones closer? Absolutely. The sound system's wretched in here. Is that better? Yes, thank you. Excellent. Thank you. This case is about the ongoing harm suffered by chronic ventilator users who are deterred from seeking healthcare during the ongoing pandemic because of a facially discriminatory state policy regarding ventilator reallocation. The New York State Ventilator Allocation Guidelines allow for the personal ventilators of our plaintiffs to be taken from them and reallocated to someone else. They're not binding on the hospitals, right? They are issued as guidelines in order to be flexible and adaptable. Have any hospitals employed them? We haven't conducted discovery yet, so we don't know whether they were employed by hospitals at this time. Okay. The plaintiffs have asked the state to issue an unequivocal statement that no one would be forcibly extubated under the guidelines without another ventilator readily available for their use or in the alternative to rescind the guidelines, but the state has... Have they been issued as an official regulation of the Department of Health state? So they were issued by the Department of Health. It does specifically say in the guidelines themselves that they would not at any point be issued as binding law in order to be... Yeah, so the governor and her now administration may want to do a lot of things, but that doesn't make it law. The threat has to be in there, doesn't it? And the threat is imminent. The guidelines are called guidelines because that's what they were made... How many times were the guidelines employed in 2019 or 2020, after March 2020? How many times were they employed in the remainder of that calendar year? We don't know. We haven't conducted discovery at this point in the litigation. We don't know that. You don't know that? No, I don't know that. And you represent an organization of people that feel that they're at risk for that, correct? We represent individual plaintiffs as well as organizations that are... Have any of your clients been denied the continued use of their ventilator as a result of these guidelines? No. Okay. Have any of your clients been threatened with the removal of their ventilators as a result of these guidelines while they were in a hospital? So our claim isn't based on the guidelines being... I didn't ask you your claim. I asked you, have any of your clients had them removed? No. Have any of your clients been threatened with the removal in a hospital? No, not for this specifically. Our clients have experienced extubation in a hospital. They are not unfamiliar with the medical system by necessity and frequently need to seek health care, and it is routine in some situations for them to be extubated.